POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE LOUISE MARN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>AMDOCS LIMITED, SHUKY SHEFFER, ELI GELMAN, and TAMAR RAPAPORT-DAGIM,<br><br>                    Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff Stephanie Louise Marn ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Amdocs Limited ("Amdocs" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Amdocs ordinary shares between December 13, 2016 and March 30, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

2.    Amdocs, through its global subsidiaries, provides software and services to communications, cable and satellite, entertainment, and media industry service providers worldwide.  Historically, the Company's largest percentage of revenues come from its North American business, mostly the U.S., particularly from large customers including, among others, AT&T Inc. ("AT&T").

3.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Amdocs overstated its profits, cash, and liquidity, while understating its debt; (ii) Amdocs concealed its large borrowing; (iii) while Amdocs' reported results showed that its North American business was stable, that business was actually deteriorating annually, in part because the Company was losing AT&T as a customer; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.    On March 31, 2021, pre-market, Jehoshaphat Research ("Jehoshaphat") published a short-seller report addressing Amdocs, which alleged, *inter alia*, that Amdocs overstated its profits, evidenced by steady parent profits despite declining subsidiary profits; that there was a concerning pattern of reputable auditors resigning, only to be replaced by "scandal-plagued or tiny shops"; that Amdocs "window-dressed" its balance sheets to keep its large borrowing a secret, namely by paying down its debt just prior to

2

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the end of each quarter, therefore showing a debt-free balance sheet on that day, before re-borrowing the money shortly thereafter; and that all of the foregoing was corroborated by former employees and direct competitors of the Company, who noted that Amdocs was losing AT&T as a customer, as well as a former American Amdocs executive, who stated that the Company's "US business was declining at a rate of [around] 7% annually . . . but then we would see the company [publish results that] say North America is stable."

5.      On this news, Amdocs' ordinary share price fell $9.19 per share, or 11.58%, to close at $70.15 per share on March 31, 2021.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ordinary shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Amdocs is headquartered in

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

10.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

11.    Plaintiff, as set forth in the attached Certification, acquired Amdocs ordinary shares at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12.    Defendant Amdocs is organized under the laws of the Island of Guernsey, with principal executive offices located at Hirzel House, Smith Street, St. Peter Port, Island of Guernsey, GY1 2NG, and Amdocs, Inc., 1390 Timberlake Manor Parkway, Chesterfield, Missouri 63017.  The Company's ordinary shares trade in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "DOX."

13.    Defendant Shuky Sheffer ("Sheffer") has served as the President and Chief Executive Officer ("CEO") of Amdocs Management Limited ("AML")—the Company's management subsidiary that performs certain executive coordination functions for all of Amdocs' operating subsidiaries—since September 2018.

4

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

14.    Defendant Eli Gelman ("Gelman") served as AML's President and CEO from before the start of the Class Period until September 2018.

15.    Defendant Tamar Rapaport-Dagim ("Rapaport-Dagim") has served as AML's Chief Financial Officer at all relevant times.   Rapaport-Dagim also serves as AML's Chief Operating Officer.

16.    Defendants Sheffer, Gelman, and Rapaport-Dagim are sometimes referred to herein collectively as the "Individual Defendants."

17.    The Individual Defendants possessed the power and authority to control the contents of Amdocs' SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Amdocs' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with Amdocs, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

18.    Amdocs and the Individual Defendants are collectively referred to herein as "Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

# SUBSTANTIVE ALLEGATIONS

## Background

19.   Amdocs, through its global subsidiaries, provides software and services to communications, cable and satellite, entertainment, and media industry service providers worldwide.  Historically, the Company's largest percentage of revenues come from its North American business, mostly the U.S., particularly from large customers including, among others, AT&T.

## Materially False and Misleading Statements Issued During the Class Period

20.   The Class Period begins on December 13, 2016, the day after Amdocs filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended September 30, 2016 (the "2016 20-F"). For the fiscal year, the 2016 20-F reported net income of $409.33 million, or $2.71 per diluted share, on revenue of approximately $3.72 billion, including approximately $2.38 billion in revenue from North America (mainly the U.S.).  The Company also reported $200 million in long-term debt, excluding interest payments, for the fiscal year.

21.   With respect to liquidity and capital resources, the 2016 20-F represented, *inter alia*, that "[c]ash, cash equivalents and short-term interest-bearing investments, net of short-term debt, totaled $0.90 billion as of September 30, 2016, compared to $1.13 billion as of September 30, 2015"; that "[t]he decrease during fiscal year 2016 was mainly attributable to $413.4 million used to repurchase our ordinary shares, $283.5 million in

6

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

net cash paid for acquisitions, $130.1 million for capital expenditures, net, and $109.3 million of cash dividend payments"; that this decrease was "partially offset by $620.2 million in cash flow from operations and $89.6 million of proceeds from stock option exercises"; and that "[n]et cash provided by operating activities amounted to $620.2 million and $772.6 million in fiscal years 2016 and 2015, respectively."

22.    Additionally, the 2016 20-F assured investors that Defendants' "policy is to retain sufficient cash balances in order to support our growth," and that Defendants "believe that our current cash balances, cash generated from operations and our current lines of credit will provide sufficient resources to meet our operational needs and to fund share repurchases and the payment of cash dividends for at least the next fiscal year."

23.    With respect to Amdocs' North American business, the 2016 20-F represented, in relevant part, that "[i]n fiscal year 2016, revenue from customers in North America . . . accounted for 64.0% . . . of total revenue, compared to 70.1% . . . in fiscal year 2015," and that "[t]he decrease in the percentage of revenue from customers in North America was driven by the increase in revenue from customers in Europe and the rest of the world, while revenue from customers in North America decreased, mainly due to AT&T's slower pace of discretionary spending."

24.    Appended as exhibits to the 2016 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Gelman and Rapaport-Dagim certified that "the [2016 20-F] fully complies with the requirements of Section

13(a) or 15(d) of the Securities Exchange Act of 1934" and that "the information contained in the [2016 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.    On December 11, 2017, Amdocs filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended September 30, 2017 (the "2017 20-F").  For the fiscal year, the 2017 20-F reported net income of $436.83 million, or $2.96 per diluted share, on revenue of approximately $3.87 billion, including approximately $2.55 billion in revenue from North America (mainly the U.S.).  The Company did not report long-term debt for the fiscal year.

26.    With respect to liquidity and capital resources, the 2017 20-F represented, *inter alia*, that "[c]ash, cash equivalents and short-term interest-bearing investments, net of short-term debt, totaled $979.6 million as of September 30, 2017, compared to $895.7 million as of September 30, 2016"; that "[t]he increase during fiscal year 2017 was mainly attributable to $636.1 million in cash flow from operations and $87.6 million of proceeds from stock option exercises"; that this increase was "partially offset by $340.6 million used to repurchase our ordinary shares, $133.4 million for capital expenditures, net, and $121.5 million of cash dividend payments"; and that "[n]et cash provided by operating activities amounted to $636.1 million and $620.2 million in fiscal years 2017 and 2016, respectively."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

27.    Additionally, the 2017 20-F contained the same statements referenced in ¶ 22, *supra*, assuring investors that Defendants' policy is to retain sufficient cash for growth and that Defendants had sufficient cash and lines of credit to meet operational needs and fund share repurchases and the payment of cash dividends for at least the next fiscal year.

28.    With respect to Amdocs' North American business, the 2017 20-F represented, in relevant part, that "[i]n fiscal year 2017, revenue from customers in North America . . . accounted for 65.9% . . . of total revenue, compared to 64.0% . . . in fiscal year 2016," and that "[t]he increase in the percentage of revenue from customers in North America was primarily attributable to increased activity with several customers, particularly AT&T and Pay TV service providers."

29.    Appended as exhibits to the 2017 20-F were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by Defendants Gelman and Rapaport-Dagim.

30.    On December 10, 2018, Amdocs filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended September 30, 2018 (the "2018 20-F"). For the fiscal year, the 2018 20-F reported net income of $354.4 million, or $2.47 per diluted share, on revenue of approximately $3.97 billion, including approximately $2.55 billion in revenue from North America (mainly the U.S.). The Company did not report long-term debt for the fiscal year.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

31.     With respect to liquidity and capital resources, the 2018 20-F represented, *inter alia*, that "[c]ash, cash equivalents and short-term interest-bearing investments, net of short-term debt, totaled $519.2 million as of September 30, 2018, compared to $979.6 million as of September 30, 2017"; that "[t]he decrease during fiscal year 2018 was mainly attributable to $419.2 million used to repurchase our ordinary shares, $355.1 net cash paid for acquisitions, $231.1 million for capital expenditures, net, [and] $134.3 million of cash dividend payments"; that this decrease was "partially offset by $557.2 million in cash flow from operations, $81.3 million of proceeds from stock option exercises and $47.0 million investment by noncontrolling interest, net"; and that "[n]et cash provided by operating activities amounted to $557.2 million and $636.1 million in fiscal years 2018 and 2017, respectively."

32.     Additionally, the 2018 20-F contained the same statements referenced in ¶ 22, *supra*, assuring investors that Defendants' policy is to retain sufficient cash for growth and that Defendants had sufficient cash and lines of credit to meet operational needs and fund share repurchases and the payment of cash dividends for at least the next fiscal year.

33.     With respect to Amdocs' North American business, the 2018 20-F represented, in relevant part, that "[i]n fiscal year 2018, revenue from customers in North America . . . accounted for 64.2% . . . of total revenue, compared to 65.9% . . . in fiscal year 2017"; that "[r]evenue from customers in North America slightly increased in fiscal year 2018, while total revenue increased at a higher rate, which resulted in a decrease of

10

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

revenue from customers in North America as a percentage of total revenue"; and that "[t]he decrease in the percentage of revenue from customers in North America was primarily attributable to lower activity with AT&T," which "was partially offset by higher revenue from other key customers in North America as we support the continuous digital transformation of the region's communications, Pay TV and media companies and by activities related to fiscal year 2018 acquisitions."

34.     Appended as exhibits to the 2018 20-F were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by Defendants Sheffer and Rapaport-Dagim.

35.     On December 16, 2019, Amdocs filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended September 30, 2019 (the "2019 20-F"). For the fiscal year, the 2019 20-F reported net income of $479.45 million, or $3.45 per diluted share, on revenue of approximately $4.09 billion, including approximately $2.58 billion in revenue from North America (mainly the U.S.). The Company did not report long-term debt for the fiscal year.

36.     With respect to liquidity and capital resources, the 2019 20-F represented, *inter alia*, that "[c]ash, cash equivalents and short-term interest-bearing investments, totaled $471.6 million as of September 30, 2019, compared to $519.2 million as of September 30, 2018"; that "[t]he decrease was mainly attributable to $398.1 million used to repurchase of our ordinary shares, $147.6 million of cash dividend payment,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

$128.1 million for capital expenditures, net, $60.6 million acquisition payment, $7.5 million contingent consideration payment from a business acquisition and $4.8 million payment to non-controlling interests"; that this decrease was "partially offset by $656.4 million in positive cash flow from operations and $41.5 million of proceeds from stock option exercises"; and that "[n]et cash provided by operating activities amounted to $656.4 million and $557.2 in fiscal years 2019 and 2018, respectively."

37.    Additionally, the 2019 20-F contained substantively the same statements referenced in ¶ 22, *supra*, assuring investors that Defendants' policy is to retain sufficient cash for growth and that Defendants had sufficient cash and lines of credit to, among other things, meet operational needs and fund share repurchases and the payment of cash dividends for at least the next fiscal year.

38.    With respect to Amdocs' North American business, the 2019 20-F represented, in relevant part, that "[i]n fiscal year 2019, revenue from customers in North America . . . accounted for 63.2% . . . of total revenue, compared to 64.2% . . . in fiscal year 2018"; that "[r]evenue from customers in North America increased during the fiscal year 2019, while total revenue increased at a higher rate, which resulted in a decrease of revenue from customers in North America as a percentage of total revenue"; and that "[t]he increase in revenue from customers in North America in absolute amounts was primarily attributable to higher revenue from key customers in North America as we support the continuous digital transformation of the region's communications, Pay TV and media

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

companies and by activities related to fiscal year 2018 acquisitions," which was "partially offset by lower revenue with AT&T."

39.    Appended as exhibits to the 2019 20-F were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by Defendants Sheffer and Rapaport-Dagim.

40.    On December 14, 2020, Amdocs filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended September 30, 2020 (the "2020 20-F").  For the fiscal year, the 2020 20-F reported net income of $497.84 million, or $3.71 per diluted share, on revenue of approximately $4.17 billion, including approximately $2.72 billion in revenue from North America (mainly the U.S.).  The Company also reported $754.9 million in long-term and short-term debt and accrued interests for the fiscal year.

41.    With respect to liquidity and capital resources, the 2020 20-F represented, *inter alia*, that "[c]ash, cash equivalents and short-term interest-bearing investments, totaled $983.9 million as of September 30, 2020, compared to $471.6 million as of September 30, 2019"; that "[t]he increase was mainly attributable to $643.9 million net proceeds from issuance of debt, $450.0 million borrowing under financing arrangement, $658.1 million in positive cash flow from operations and $97.9 million of proceeds from stock option exercises"; that this increase was "partially offset by $360.9 million used to repurchase of our ordinary shares, $350.0 million payments under financing arrangement,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

$249.4 million of payments for business and intangible assets acquisitions, $205.5 million for capital expenditures, net, [and] $164.1 million of cash dividend payment"; and that "[n]et cash provided by operating activities amounted to $658.1 million and $656.4 in fiscal years 2020 and 2019, respectively."

42.    Additionally, while the 2020 20-F contained substantively the same statements referenced in ¶ 22, *supra*, with respect to assuring investors that Defendants had sufficient cash and lines of credit to, among other things, meet operational needs and fund share repurchases and the payment of cash dividends for at least the next fiscal year, Defendants no longer represented that their policy is to retain sufficient cash for growth.

43.    With respect to Amdocs' North American business, the 2020 20-F represented, in relevant part, that "[i]n fiscal year 2020, revenue from customers in North America . . . accounted for 65.3% . . . of total revenue, compared to 63.2% . . . in fiscal year 2019"; that "[t]he increase in revenue in fiscal year 2020 in North America was primarily attributable to higher revenue from managed services activities"; and that, "in addition to the global uncertainties, including those resulting from the COVID-19 pandemic, the recently completed T-Mobile and Sprint merger remains a source of uncertainty in the North America region."

44.    Appended as exhibits to the 2020 20-F were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by Defendants Sheffer and Rapaport-Dagim.

14

45.     The statements referenced in ¶¶ 20-44 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Amdocs overstated its profits, cash, and liquidity, while understating its debt; (ii) Amdocs concealed its large borrowing; (iii) while Amdocs' reported results showed that its North American business was stable, that business was actually deteriorating annually, in part because the Company was losing AT&T as a customer; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

46.     On March 31, 2021, pre-market, Jehoshaphat Research ("Jehoshaphat") published a short-seller report addressing Amdocs, which alleged, among other things, that Amdocs overstated its profits, evidenced by steady parent profits despite declining subsidiary profits; that there was a concerning pattern of reputable auditors resigning, only to be replaced by "scandal-plagued or tiny shops"; that Amdocs "window-dressed" its balance sheets to keep its large borrowing a secret, namely by paying down its debt just prior to the end of each quarter, therefore showing a debt-free balance sheet on that day, before re-borrowing the money shortly thereafter; and that all of the foregoing was corroborated by former employees and direct competitors of the Company, who noted that Amdocs was losing AT&T as a customer, as well as a former American Amdocs

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

executive, who contradicted Amdocs' assessment that the Company's North American business was stable.

47.    With specific respect to Amdocs' overstated profits, the Jehoshaphat report alleged, *inter alia*, that "[u]sing Amdocs' international subsidiary filings," Jehoshaphat discovered that Amdocs' "operating profitability appears to be overstated by ~40-50%, or as much as $200m"; that "[y]ears ago, DOX's[1] major and minor corporate subsidiaries had profit margins that reconciled reasonably closely with the profit margins reported by the public company parent," but that "beginning in [fiscal year 2016], sub profits began to exhibit a sharp decline" even as Amdocs "continued to report steady, healthy profit margins at the parent level"; that "[n]umerous accounting 'red flags' started appearing more visibly in the parent financials around the same time as this breakdown," corroborating Jehoshaphat's findings, including, among other things, "unbilled DSOs [daily sales outstanding], bad debt allowance games, [and] reserve releases"; that Amdocs' "<u>true</u> margin from its subsidiaries . . . is consistent with its BPO (Business Process Outsourcing) business model," namely, "a BPO-type, single-digit EBIT [earnings before interest and taxes] margin"; that Amdocs' "cash tax payments are consistently lower than all of," among other things,  "the tax rates of its low-tax jurisdictions," "the rates of a wide variety of comparable peers in comparable tax jurisdiction," and the Company's "GAAP

---

[1] All quoted references to "DOX" from the Jehoshaphat report are to Amdocs.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

[generally accepted accounting principles] effective tax rate"; and that although Jehoshaphat tried "using explanations involving intercompany revenues, tax considerations, etc.," the results "still defied economic logic" and "[t]he numbers just don't add up."

48.    Further casting doubt on the validity of Amdocs' reported profits, the Jehoshaphat report found that Amdocs "has experienced a spate of recent and unusual auditor resignations at various subsidiaries"; that "[a]s multiple Big Four auditing firms have resigned, DOX has replaced them with scandal-plagued or tiny shops," including one "notorious for helping none other than Donald Trump inflate his net worth to the public," and another that "took PWC's [PricewaterhouseCoopers] place, [which] appears to be a 9-person outfit based out of Switzerland"; that "[i]n the case of one DOX sub, an auditor resigned, and then its replacement resigned only a year later"; and that, in sum, Jehoshaphat "investigated these auditor relationships and do not believe that normal auditor turnover or mere coincidence can explain these resignations," with "[t]he 'legit' auditors . . . quitting for a reason," namely, the Company's illicit accounting practices.

49.    Specifically, as alleged in the Jehoshaphat report, in Amdocs' fiscal year 2018, KPMG resigned from the Company's Irish subsidiary, Brite:Bill, and was replaced by Ernst & Young ("EY"), who later resigned as well in the Company's fiscal year 2020, and was replaced by Mazars LLP ("Mazars"), "of Trump Foundation asset-inflation fame." Additionally, the Jehoshaphat report showed that in Amdocs' fiscal year 2019, EY

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

resigned from two Amdocs United Kingdom subsidiaries, Amdocs Systems Europe Ltd. and Amdocs Systems Ltd., which were also replaced by Mazars.  The Jehoshaphat report also showed that in Amdocs' fiscal year 2020, EY resigned from the Company's other Irish subsidiary, Astrum, which was also replaced by Mazars.  Finally, the Jehoshaphat report showed that in Amdocs' fiscal year 2020, PWC resigned from the Company's Swiss subsidiary, Amdocs International GmBH, and was replaced by Haussmann Revision AG, a relatively unheard-of auditing firm "of absolutely no fame whatsoever."  As the Jehoshaphat report highlighted, this "involves <u>three</u> parent auditor firms (EY, KPMG, and PWC), and <u>five</u> Amdocs subsidiaries across <u>three</u> different countries in Europe (UK, Ireland, Switzerland)," and, in the case of Brite:Bill, "two different auditors resign[ed] . . . in just over one year."

50.    With specific respect to Amdocs' cash, liquidity, undisclosed debt, and related hidden borrowing, the Jehoshaphat report alleged, *inter alia*, that "[a]pproximately 1/3 of Amdocs' stated cash (around $500m) is practically unavailable for use, but the company has hidden and misrepresented this problem in a variety of ways"; that Amdocs' cash is either "trapped" or nonexistent; that "[u]nbeknownst to investors, Amdocs has been secretly borrowing a large amount of money for years but avoiding showing any debt as of each quarter-end," which "is known as 'window-dressing' the balance sheet"—*i.e.*, "paying down its debt just prior to the end of each quarter, therefore showing a debt-free balance sheet on that day, and then re-borrowing the money shortly thereafter"; that this

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

"is why this company needed to begin selling receivables at a discount in [fiscal year 2018], as well as to utilize more value-destructive measures to raise cash since, despite claiming to have a huge excess cash pile";  and that even though Amdocs "now shows $1bn in debt but claims not to need any of it – this is utterly false."

51.     Finally, the Jehoshaphat report cited former employee interviews to confirm its findings, noting, among other things, that its "key findings were consistent with what former employees and direct competitors told us"; that "[t]hese disparate individuals tell the same story: DOX has been losing business for years but has made up for these losses by inflating financials, sometimes to a point beyond recognition by the country managers"; that "[o]ther formers/peers describe [Amdocs as] a business that is losing customers, most notably AT&T, piece by piece"; and that "[o]ne former American DOX executive told us that he and his colleagues had no idea how DOX managed to report stability in the US in the quarterly earnings results shown to Wall Street," stating (paraphrastically to avoid revealing the individual's identity through his speech patterns) that "[t]he US business was declining at a rate of [around] 7% annually...but then we would see the company [publish results that] say North America is stable," and that it was a "big surprise" when "[w]e would send [our quarterly numbers] to Israel…and somehow everything all comes out as favorable…every quarter [from 2016-on]."

52.     On this news, Amdocs' ordinary share price fell $9.19 per share, or 11.58%, to close at $70.15 per share on March 31, 2021.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ordinary shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Amdocs ordinary shares during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Amdocs ordinary shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Amdocs or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

56.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Amdocs;

- whether the Individual Defendants caused Amdocs to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Amdocs ordinary shares during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

21

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

59.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

60.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Amdocs ordinary shares are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ordinary shares; and

- Plaintiff and members of the Class purchased, acquired and/or sold Amdocs ordinary shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

61.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

63.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Amdocs ordinary shares; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Amdocs ordinary shares at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

66.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Amdocs ordinary shares. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Amdocs' finances and business prospects.

67.    By virtue of their positions at Amdocs, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

68.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Amdocs, the Individual Defendants had knowledge of the details of Amdocs' internal affairs.

69.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Amdocs. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Amdocs' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Amdocs ordinary shares was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Amdocs' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Amdocs ordinary shares at artificially inflated prices and relied upon the price of the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

ordinary shares, the integrity of the market for the ordinary shares and/or upon statements disseminated by Defendants, and were damaged thereby.

70.    During the Class Period, Amdocs ordinary shares were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Amdocs ordinary shares at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said ordinary shares, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Amdocs ordinary shares was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Amdocs ordinary shares declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

71.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

72.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

purchases, acquisitions and sales of the Company's ordinary shares during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

73.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.    During the Class Period, the Individual Defendants participated in the operation and management of Amdocs, and conducted and participated, directly and indirectly, in the conduct of Amdocs' business affairs.  Because of their senior positions, they knew the adverse non-public information about Amdocs' misstatement of income and expenses and false financial statements.

75.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Amdocs' financial condition and results of operations, and to correct promptly any public statements issued by Amdocs which had become materially false or misleading.

76.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Amdocs disseminated in the marketplace during the Class Period concerning Amdocs' results of operations.  Throughout the Class Period,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the Individual Defendants exercised their power and authority to cause Amdocs to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Amdocs within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Amdocs ordinary shares.

77.    Each of the Individual Defendants, therefore, acted as a controlling person of Amdocs. By reason of their senior management positions and/or being directors of Amdocs, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Amdocs to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Amdocs and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

78.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Amdocs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  April 9, 2021                     Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Attorney for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS